**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARYCRUZ VIDOT, ) | |
| ) | CASE NO.  1:14-cv-01343 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Marycruz Vidot ("Vidot") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On June 24, 2011, Vidot filed an application for SSI alleging a disability onset date of June 15, 2010.  (Tr. 25.)  Her application was denied both initially and upon reconsideration.

On November 27, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Vidot, represented by counsel, and an impartial vocational expert ("VE") testified.  On January 25, 2013, the ALJ found Vidot was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 31-32.)  The ALJ's decision became

final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-three (43) at the time of her administrative hearing, Vidot is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). (Tr. 30.) Vidot has a limited education and past relevant work as a hand packager. *Id*.

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Vidot established a medically determinable, severe impairment, due to systemic lupus erythematosus; however, her impairment, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 27.) Vidot was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 31-32.) The ALJ then used the Medical Vocational Guidelines ("the

grid") as a framework and VE testimony to determine that Vidot was not disabled. *Id*.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Listing 14.02(A)*

Vidot argues that the ALJ erred by finding that she did not meet or medically equal Listing 14.02(a).[1] At the outset, the Court notes that it is not altogether clear whether Vidot is only arguing that the ALJ failed to sufficiently explain the reasons for finding Listing 14.02(A) was not met *or* whether she is also challenging the ALJ's finding as unsupported by substantial evidence.[2]

At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See*

---

[1] To satisfy Listing 14.02, a claimant must demonstrate that she satisfies either the "A" or "B" criteria. It bears noting that Vidot only argues that ALJ erred by finding that she did not meet the "A" criteria. (ECF No. 12 at 10-14.) As such, the Court foregoes any discussion of the "B" criteria.

[2] For the most part, Vidot's argument revolves around the allegation that the ALJ's explanation or analysis was insufficient, that it fails to specifically mention her weight loss, and that it allegedly failed to analyze any portion of the medical record. (ECF No. 12 at 11-14.) However, in the very last sentence of her argument, Vidot, for the first time, asserts that the ALJ's finding that she did not meet or equal the listing was not supported by substantial evidence. (ECF No. 12 at 14.) Though related, these are two distinct arguments.

*Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

> Listing 14.02(A) states, in pertinent part:
>
> 14.02 Systemic lupus erythematosus. As described in 14.00D1.[3] With:
>
> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

The ALJ, in addressing whether Vidot had demonstrated that she met or equaled the listing, found as follows:

> The evidence does not demonstrate the requisite degree of joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, mental involvement or the involvement of two or more organs/body symptoms with significant, documented, constitutional symptoms and signs of severe fatigue

---

[3] Systemic lupus erythematosus is described in 14.00D1 as follows:

a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

fever, malaise and weight loss as required by listing 14.02.

(Tr. 27.)

Vidot argues that the ALJ's "treatment of this issue was insufficient, as the ALJ did not provide any explanation or analysis ...." (ECF No. 12 at 11.) It is important to observe that there is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937 (N.D. Ohio Aug. 15, 2014); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012).

> [T]o date, no published Sixth Circuit case requires an ALJ to articulate in any particular detail the manner in which a claimant failed to meet or equal a Listing. To the contrary, historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006) (stating in a case where obesity was not severe, that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p, 2002 SSR LEXIS 1 offers any particular procedural mode of analysis for obese disability claimants.") So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).

*Clemmons v. Astrue*, 2012 U.S. Dist. LEXIS 8650 (S.D. Ohio Jan. 25, 2012); *accord Griffin v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 74016 (S.D. Ohio May 30, 2014). A reviewing court may, however, "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937 at *22. As it is appropriate to consider the ALJ's decision in its entirety when addressing the sufficiency the ALJ's step-three analysis, it bears noting the extensive discussion the ALJ included concerning Vidot's lupus and associated symptomology:

> The claimant suffers from lupus, which limits her to the above-described residual functional capacity. In July 2010, the claimant complained of pain in the bilateral hands, as well as numbness and difficulty holding and handling things. An MRI conducted at that time was normal, as was an EMG, making carpal tunnel unlikely (Ex. lF/6 1). One month later, she complained of jaw pain, but reported no problems with her hands. Other than her neck being mildly tender and her jaw opening only 50% expected, an examination was normal (Ex. lF/57). She underwent a rheumatology consult in December 2010 for weight loss and arthralgias. She also complained of fatigue. Upon examination, her hands were slightly puffy, but no synovitis was noted. Additionally, muscle strength was normal. Her ENA panel was positive for Smith, RNP, and SSA Based on this,

> she was diagnosed with lupus (Ex. 42, 44, 46).
>
> In February 2011, she presented for a follow up complaining of fatigue and pain in her hands. An examination revealed no edema in the extremities. Peripheral pulses were intact. Muscle strength was normal, and she had normal range of motion in the neck. Her hands showed no evidence of swelling or synovitis, and she had normal flexion and extension of the wrists without edema or tenderness. Further, her knees showed no effusion or tenderness, and range of motion was normal (Ex. lF/33). One month later, an examination of her eyes was normal except for a mild cataract on the slit lamp (Ex. l F/29). In April 2011, she had no constitutional symptoms other than fatigue. Additionally, she denied anxiety, depression, hallucinations, confusion, seizures, or weakness (Ex. l F/8). An examination one month later was normal. Muscle strength was normal, as was range of motion in the neck. Other than a left flexion deformity of the 5th digit PIP, her hands were normal without swelling or synovitis. Further, her wrists and knees were normal (Ex. lF/6). In August 2011, fatigue was improved, and her main complaint was joint pain. Upon examination, she had full range of motion throughout without joint swelling (Ex. 2F/20). It was noted in November 2011 that her lupus flare up was significantly improved due to prednisone (Ex. 2F/ 13).
>
> The claimant reported in January 2012 that her fatigue had improved. Though she complained of joint pain, examination revealed that she had full range of motion throughout without joint swelling or tenderness (Ex. 2F/6). In April 2012, she presented with sore throat, diarrhea, epigastric pain, and myalgias. However, she reported that her diarrhea had resolved. An examination conducted at that time was normal (Ex. 4F/2). Other than constipation, a review of systems one month later was negative. Upon examination, her lungs were clear, and she had regular heart rate and rhythm. Her abdomen was soft and non-tender. There was no joint swelling, edema, or joint deformities noted, and no rashes reported. Further, it was noted that her lupus related issues had resolved (Ex. 5F/5-6). In May 2012, she complained of joint pain, body aches, and swelling of some PIPs. However, an examination revealed that she was well appearing. Her neck was supple. She had normal strength throughout without edema or synovitis, though multiple tender points were noted. Though it was noted that her tender points might be a component of fibromyalgia, no diagnosis was made. Additionally, it was noted that her lupus was stable (Ex. 5F/12, 14).

(Tr. 29-30.)

Given the above, the Court finds that the ALJ sufficiently explained her reasons for finding that Vidot did not meet or equal Listing 14.02(A). Nonetheless, the Court turns to the issue of whether this finding was supported by substantial evidence.

First, Vidot argues that none of her treating physicians questioned her history of lupus (hereinafter "SLE"), and further asserts that it has been "established beyond question that she has lupus." (ECF No. 12 at 11-12.) A mere diagnosis is insufficient. As thoroughly explained by one district court addressing a similar argument, "the mere diagnosis of an impairment in a Listing does not mean a claimant meets the Listing; rather, a claimant 'must also have the

findings shown in the Listing of that impairment.'" *Meraz v. Barnhart*, 300 F. Supp.2d 935, 940 (C.D. Cal. 2004) (citing 20 C.F.R. § 416.925(d)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.1999); *Rockson v. Comm'r of Soc. Sec.*, No. 13-CV-14486, 2014 WL 5421239, at *3 (E.D. Mich. Oct. 24, 2014) ("It is not enough that the impairments have the diagnosis of a Listed Impairment; the claimant must also meet the criteria found in the Listing of that impairment.") In other words, "[t]o meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Meraz*, 300 F. Supp.2d at 940 (*citing Tackett*, 180 F.3d at 1099). "It is not sufficient to come close to meeting the requirements of a Listing." *Sullivan v. Comm'r of Soc. Sec.*, No. 1:07CV331, 2009 WL 648597, at *12 (S.D. Ohio Mar. 11, 2009)

       Therefore, to meet the criteria of Listing 14.02(A), Vidot must establish ALL of the following: (1) involvement of two or more organs/body systems; (2) one of the organs/body systems involved must be at least at a moderate level of severity; and, (3) at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). Vidot's brief argues that there is evidence of record that could support a finding that the listing was satisfied. (ECF No. 12 at 11-14.) Vidot cites numerous pages of the record which she believes would support such a finding. *Id*. While the Court recognizes that there may be significant evidence of two constitutional symptoms, especially involuntary weight loss, Vidot is rather conclusory in her assertion that two or more organs/body systems are involved. (ECF No. 12 at 11-12.) More importantly, she fails to explain how the evidence establishes one of the organs/body systems involved rises to a moderate level of severity. *Id*.

       Under the substantial evidence standard, it is immaterial whether there is evidence of record capable of supporting a finding that the listing was satisfied. An administrative decision is not subject to reversal merely because substantial evidence could have supported such findings or because Vidot proffers a different interpretation of the evidence. "This argument obviously ignores the standard of review by which [courts] are bound. If substantial evidence supports the ALJ's findings, [a court] must affirm the resulting conclusion, even if [the court] would have decided the matter differently in the first instance." *Isaac v. Sec'y of Health & Human Servs.*,

110 F.3d 64, 1997 U.S. App. LEXIS 11126 (6th Cir. 1997). In other words, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (*quoting Key v. Callahan*, 109 F .3d 270, 273 (6th Cir.1997)). A reviewing court, like this one, does not conduct a *de novo* review, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984); *Rogers v. Astrue*, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473 (E.D. Ky. Feb. 27, 2012).

Vidot, however, does not argue that there is a dearth of evidence capable of supporting the ALJ's findings. Notably, both State Agency medical consultants, Drs. Bertani and Klyop, expressly acknowledged Vidot suffered from SLE but did not opine that she met or equaled Listing 14.02. (Tr. 87-91; 95-99.) The ALJ ascribed great weight to the opinions of the State Agency doctors. (Tr. 30.) Absent contradictory opinions from a treating physician, an ALJ's decision is supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating consultant. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Clark v. Astrue*, 2011 U.S. Dist. LEXIS 100778, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (finding that state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). The opinions of non-examining state agency medical consultants can, under certain circumstances, be given significant weight. *See e.g. Black v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 140155, 2012 WL 4506018 at * 5 (N.D. Ohio Sept. 28, 2012); *Hart v. Astrue*, 2009 U.S. Dist. LEXIS 68315, 2009 WL 2485968 at * 8 (S.D. Ohio Aug. 5, 2009). This occurs because non-examining sources

are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the [Social Security] Act."  SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180.

While Vidot points to treatment records and a diagnosis of SLE, she does not identify any treating sources who opined that she met all the criteria of Listing 14.02(A).  By merely pointing to evidence that could support a favorable determination, Vidot is essentially asking this Court to reweigh the evidence and issue a *de novo* determination.  This Court declines to do so. Therefore, ALJ's finding that the criteria of Listing 14.02(A) was not met or equaled is supported by substantial evidence.

***Migraine Headaches and Fibromyalgia***

In her second assignment of error, Vidot asserts that the ALJ erred at Step Two by finding that her migraine headaches and fibromyalgia did not constitute severe impairments. (ECF No. 12 at 14-18.)

As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  Courts, however, liberally construe the phrase "significantly limits" in favor of claimants. *See, e.g., Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (S.D.Ohio Aug. 3, 2012).  If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 416.920a(d).  The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).  Nonetheless, if the ALJ finds at least one impairment to be "severe," she must move on to the subsequent steps in the evaluation.  She is not required to continue to analyze the remainder of the claimant's impairments to determine whether they too are severe. *See Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir. 2009) (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837

F.2d 240, 244 (6th Cir. 1987)); *accord Hickox v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87813 at *13, 2010 WL 3385528 (W.D.Mich. Aug.2, 2010) ("The finding of at least one severe impairment is sufficient to trigger further analysis.  The ALJ's failure to find additional severe impairments at step 2 is 'legally irrelevant.' ") (*quoting McGlothin v. Comm'r*, 299 Fed. App'x. 516, 522 (6th Cir.2008)).  After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " S.S.R. 96–8p, 1996 WL 374184, at *5.  When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577.

On November 28, 2011, Wendy Cicek, M.D., diagnosed Vidot with "Migraines, NOS/not intrebl (primary encounter diagnosis)."  (Tr. 322.)  Vidot reported associated nausea, vision changes, and photophobia.  (Tr. 321.)  On May 2, 2012, Dr. Cicek continued diagnosing migraine headaches noting "high sensitivity."[4]  (Tr. 425.)  On the same date, Vidot reported that her headaches could last for three days, were worse with movement, and were accompanied by photophobia and phonophobia.  (Tr. 422.)

At Step Two, the ALJ did not include migraine headaches or fibromyalgia among Vidot's "severe" impairments.  (Tr. 27.)  With respect to the migraine headaches, later in her decision, the ALJ observed that Vidot's "headaches are relieved by washing her hair with cold water and taking medication."  (Tr. 28.)  While Vidot asserts that the ALJ failed to adequately address the diagnosis, she does not argue that the RFC was insufficient and does not point to any particular work related limitations resulting from her migraines.  Moreover, Vidot has not pointed to any opinions from medical sources suggesting that Vidot's migraine headaches would impact her ability to perform the demands of light work.  (ECF No. 12.)  As such, she has not established that failure to include her migraine headaches in the category of severe impairments resulted in

---

[4] Vidot also cites a portion of the medical record where she complained of "occasional headaches."  (Tr. 219.)

11

reversible error.

As for fibromyalgia, the ALJ stated that "[t]hough it was noted that [Vidot's] tender points might be a component of fibromyalgia, **no diagnosis was made**." (Tr. 30) (emphasis added). Vidot's contention that her physicians "came to the determination that she suffered from fibromyalgia" is unsupported by the record.[5] (ECF No. 17.) The only treatment note of record cited by the parties mentioning fibromyalgia is the portion expressly cited by the ALJ: "Her widespread MSK pains with multiple tender points and in the absence of synovitis likely represents a component of fibromyalgia." (Tr. 434.) However, the "encounter diagnoses" contained in that treatment note includes only SLE and "[m]yalgia and myositis, unspecified." (Tr. 436.) The Commissioner argues that myalgia is simply muscle pain which "can be caused by numerous conditions, including, but not limited to, fibromyalgia."[6] (ECF No. 15 at 12-13.) Conversely, Vidot's brief cites no authority suggesting that a diagnosis of myalgia or myositis is the equivalent of diagnosing fibromyalgia. (ECF No. 12.) Moreover, pursuant to Social Security Ruling ("SSR") 12-2p, a person is only found to have fibromyalgia if the following criteria is satisfied:

1. A history of widespread pain--that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)--that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.

---

[5] The portions of the record cited by Vidot (Tr. 417, 430, 436) contain no mention of fibromyalgia. (ECF No. 12 at 17.)

[6] The Commissioner cites several pages from the Mayo Clinic and National Institutes of Health websites that support her assertion that neither myalgia nor myositis is synonymous with fibromyalgia. (ECF No. 15 at 12-13.) Muscle Pain: Definition, Mayo Found. for Med. Educ. & Research, at http://www.mayoclinic.org/symptoms/muscle-pain/basics/definition/sym-20050866 (Apr. 9, 2013); Muscle Pain: Causes, Mayo Found. for Med. Educ. & Research, at http://www.mayoclinic.org/symptoms/muscle-pain/basics/causes/sym-20050866 (Apr. 9, 2013). Myositis, Nat'l Inst. of Health MedlinePlus, http://www.nlm.nih.gov/medlineplus/myositis.html

      a.      The 18 tender point sites are located on each side of the body at the:.

- Occiput (base of the skull);
- Low cervical spine (back and side of the neck);
- Trapezius muscle (shoulder);
- Supraspinatus muscle (near the shoulder blade);
- Second rib (top of the rib cage near the sternum or breast bone);
- Lateral epicondyle (outer aspect of the elbow);
- Gluteal (top of the buttock);
- Greater trochanter (below the hip); and
- Inner aspect of the knee.

      b.      In testing the tender-point sites, the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.

   3.      Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

2012 SSR LEXIS 1 at **5-7 (SSR 2012) (footnotes omitted).

      Even if the Court were to presume that the criteria of section one was satisfied (*i.e.* history of widespread pain in all quadrants of the body), there is no indication that any physician actually found at least 11 of 18 positive tender points. Nonetheless, if the Court were to assume for the sake of argument that 11 positive tender points were identified, Vidot points to no evidence suggesting that testing was performed to rule out other disorders that could account for her symptoms and signs. As such, absent a formal diagnosis of fibromyalgia by a physician of record, the Court finds no error in the ALJ's determination that fibromyalgia was not a severe impairment. Furthermore, as acknowledged by Vidot in her brief, many of her symptoms stemming from SLE overlap with fibromyalgia. (ECF No. 12 at 17.) Tellingly, Vidot has not identified any additional work-related limitations stemming from her SLE, migraine headaches, or her alleged fibromyalgia, that are unaccounted for by the RFC. As such, her second assignment of error is without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White<br>
United States Magistrate Judge

Date: May 13, 2015

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**